(December 16, 1904.)

## STATE v. ROOKE.

### [79 Pac. 82.]

DEMURRER TO INFORMATION OVERRULED WHEN—APPLICATION FOR CHANGE OF VENUE OVERRULED WHEN—APPLICATION FOR CONTINUANCE OVERRULED WHEN—WHEN NAMES OF WITNESSES MAY BE INDORSED ON INFORMATION—SWEARING ALL WITNESSES IN A BODY NOT ERROR—SUFFICIENCY OF CHANGE OF OWNERSHIP OF PROPERTY—STATEMENT OF PROSECUTING ATTORNEY TO JURY NOT ERROR WHEN—INSTRUCTIONS OF THE COURT SUFFICIENT WHEN—VERDICT SUFFICIENT WHEN—RULE AS TO TESTIMONY OF ACCOMPLICES—PERMITTING LETTER TO GO TO JUROR NOT ERROR WHEN.

1. A demurrer to an information will be overruled when it charges the unlawful and felonious taking of the property from the possession of the owner, naming him, giving a description of the property, fixing time and venue.

2. An application for change of venue will be denied when it is based on the ground of the bias and prejudice of the people of the county, where it is shown that an equal number of the citizens of the county testify that in their opinion a fair and impartial trial can be had in the county.

3. It is not error to overrule an application for continuance when it is not sufficiently made to appear to the court that the evidence of the absent witnesses can be furnished at a future term of the court, or that the testimony of such witnesses is material to the defendant setting out in the affidavit for continuance what defendant expects to prove by such absent witnesses.

4. Names of witnesses may be indorsed on the information at the beginning of the trial when it satisfactorily appears to the court that the prosecuting officer could not reasonably have asked such permission at an earlier time.

5. It is not error to swear all witnesses in a body at the beginning of the trial.

6. When the information charges that the property alleged to have been stolen was the property of C. W. Dunham, the proof shows that Charles Dunham was the owner thereof, and the verdict shows the property to have been that of C. W. Dunham, the variance is not sufficient to warrant a new trial where it does not appear that they are different persons.

7. Erroneous statements of the prosecuting attorney or other counsel on behalf of the prosecution may be explained by the party making them.

8. When the court trying the case fully and fairly instructs the jury on every question arising on the trial, it is not error to refuse instructions submitted by the defendant or prosecution.

9. Before a party charged with crime can be convicted upon the testimony of accomplices, there must be corroboration of the evidence of such witnesses.

10. Where it is shown that a letter had been given to a juror during the trial or before a verdict had been returned and the court was ignorant of such fact, and it is further shown that on the hearing of the motion for a new trial the attention of the court is not called to such fact, it cannot be urged in this court as a ground for new trial.

(Syllabus by the court.)

APPEAL from the District Court of Idaho County. Honorable Edgar C. Steele, Judge.

Judgment of conviction of grand larceny. Judgment affirmed

The facts are stated in the opinion.

Clay McNamee, M. R. Hattabaugh, A. S. Hardy and C. H. Nugent, for Appellant.

The only evidence offered to show that this animal was ever in the possession of Rooke is the fact that she was placed in a pasture along with horses belonging to Rooke and that Rooke settled the pasture bill. There is no evidence from which it can even be inferred that the defendant ever knew that this animal had been placed in the pasture, or that any horse had been placed there by others who were not the owners of the same. This court has held that where the presumption arising from the possession of stolen property is overcome, the evidence is insufficient to warrant conviction. (*State v. Marquardson*, 7 Idaho, 352, 62 Pac. 1034.) But in the case at bar the state never raised a presumption of guilt. It did prove that the defendant never took the horse, and established a *prima facie* case that it was never in the possession of the defendant, to his knowledge. (*People v. Curran* (Cal.), 31 Pac. 1116.) Where the evidence fails to connect the defendant with the offense charged, the conviction will be set aside. (*State*

*v. Adams,* 9 Idaho, 582, 75 Pac. 258; *State v. Nesbit,* 4 Idaho, 548, 43 Pac. 66.) Also where no common enterprise is shown. (*Hilligas v. State,* 55 Neb. 586, 75 N. W. 1110.) In the case at bar the state does not rely upon circumstantial evidence; every detail is sworn to by eye-witnesses. There is no room for the presumptions dealt in where the evidence is circumstantial. It is error to allow a jury to infer a fact of which there is no evidence. (*Saunders v. People* (Mich.), 1 Am. Cr. Rep. 347.) Testimony which raises a mere conjecture ought not to be left to a jury as evidence of a fact which a party is required to prove. (*State v. Carter* (N. C.), 1 Am. Cr. Rep. 444.) Evidence of the perpetration by the defendant of a crime other than that for which he is on trial is not admissible unless such connection be shown between the two offenses as tends to prove that if defendant were guilty of the one, he was also guilty of the other. (*Swan v. Commonwealth* (Pa.), 4 Am. Cr. Rep. 188, and note, p. 190; *People v. Tucker,* 104 Cal. 440, 38 Pac. 195.) On the subject of other thefts in larceny cases see *State v. Kelly* (Vt.), 9 Am. Cr. Rep. 354, and note, p. 361; *People v. Bird,* 124 Cal. 32, 56 Pac. 639. The testimony of the witnesses tending to connect the defendant with the alleged theft, and who swore to the taking of the horse, was testimony of witnesses admitting that they were concerned in the taking, and who were therefore accomplices according to their own claim. There is not sufficient testimony from other persons of material facts to corroborate the testimony of these accomplices. The testimony of accomplices must be corroborated. (*Territory v. Neligh,* 2 Ariz. 69, 10 Pac. 357; *Middleton v. State,* 52 Ga. 527, 1 Am. Cr. Rep. 194; *People v. Kunz,* 73 Cal. 313, 14 Pac. 836.) The courts hold that threats of lynching are sufficient to authorize change of venue. (*Richmond v. State,* 16 Neb. 388, 20 N. W. 282; *State v. Greer,* 22 W. Va. 800.) The courts have also held that newspaper attacks upon the defendant are enough to authorize change of venue. (*Gallaher v. State,* 40 Tex. Cr. Rep. 296, 50 S. W. 388; *State v. Olds,* 19 Or. 397, 24 Pac. 394. See, also, *Meyers v. State,* 39 Tex. Cr. Rep. 500, 46 S. W. 817; *Saffold v. State,* 76 Miss. 258, 24 South. 314; *Jamison v.*

*People,* 145 Ill. 357, 34 N. E. 486; *Johnson v. Commonwealth,* 82 Ky. 116; *State v. Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *State v. Flaherty,* 42 W. Va. 240, 24 S. E. 885.)

John A. Bagley, Attorney General, for the State.

Swearing witnesses in a body not reversible error. (*State v. Crea, ante,* p. 88, 76 Pac. 1013.) Misconduct of county attorney: This is not assigned as a ground for a new trial in the notice and motion for a new trial, and cannot be considered by this court. The conduct complained of is not sufficient to warrant a reversal of this case or bring it within the rule laid down in *State v. Irwin,* 9 Idaho, 35, 71 Pac. 608; *State v. Harness, ante,* p. 18, 76 Pac. 788.

STOCKSLAGER, J.—On the eighth day of September, 1903, an information was filed in the district court of Idaho county, charging the defendant, William Rooke, with the crime of grand larceny. After alleging that the defendant had waived a preliminary examination, the prosecuting officer charges the larceny as follows:

1. That the said William Rooke, on or about the twenty-third day of January, 1903, at the county of Idaho, and state of Idaho, then and there being, did then and there willfully and unlawfully and feloniously steal, take, carry, lead and drive away from the possession of one C. W. Dunham, one roan mare, the same then and there being the personal property of said C. W. Dunham.

To this information a demurrer was filed: 1. That said information does not substantially conform to the requirements of sections 7677, 7678 and 7679 of the Revised Statutes; 2. That the facts stated in said information do not constitute a public offense.

This demurrer was overruled, to which counsel for defendant excepted. Counsel for defendant filed a motion for change of venue, which was by the court overruled; all these proceedings were had at the September, 1903, term of the district court of Idaho county. The next step disclosed by the transcript was an application for a continuance on behalf of the defendant, which was filed on the first day of February, 1904, it be-

ing the first day of the February term of the Idaho county district court. The record shows that this motion was argued and submitted to the court and overruled on the said first day of February, 1904. On the same day it is shown that the prosecuting officer asked to have the names of a number of witnesses indorsed on the information, which was objected to by the defendant. The objection was overruled and the court directed the names of a large number of witnesses to be indorsed on the information. On February 18, 1904, it is shown that the court ordered that a jury be impaneled to try the cause, which was completed, and on the 19th the trial was resumed and continued from day to day until completed. On the twenty-fourth day of February, 1904, the jury returned the following:

"February Term, 1904.

The State of Idaho, 
       Plaintiff,

    v.

William Rooke, 
       Defendant.

"VERDICT.

"We, the jury in the above-entitled cause, duly impaneled and sworn, find the defendant guilty as charged in the information.

"HENRY FORSEMAN,
"Foreman."

On the twenty-sixth day of February, 1904, the defendant was sentenced to serve a term of ten years in the penitentiary of the state of Idaho. This appeal is from the judgment and from an order overruling a motion for a new trial. Counsel for defendant make eighty-six assignments of error, and furnish us a transcript of seven hundred and forty folios. A large number of the assignments of error are based upon the admission of evidence and the instructions of the court given on its own motion.

The first and fifth assignments of error are based upon the ruling of the court in overruling the demurrer to the information. Counsel for defendant in support of this contention say: "The information does not allege anything more than that the defendant took the roan mare described from the possession of the party and then released it. It does not allege directly that he drove or took the horse, but only that he took it from the possession of this person."

As we construe the language of the information, the defendant is informed that on or about a date named he is charged with having willfully, unlawfully and feloniously stolen, taken and driven away from the possession of the complaining witness, certain personal property, the unlawful taking of which is grand larceny under our statute. This is all the law requires, and the demurrer was properly overruled.

Assignment No. 2 is based on the ruling of the court in refusing to grant a continuance on the application of defendant. The first statement of the defendant in his affidavit for a continuance is, "that he is one of the defendants in the foregoing cause, and he is also defendant in four other causes for alleged horse-stealing now pending in said district court." Then follows an allegation that "on or about the eleventh day of February, 1903, he was charged in the probate court, together with other defendants [naming them] with having stolen a number of horses in said county jointly as one joint act."

"That for some reason or other unknown to affiant all the other defendants excepting Joe Canfield and Richard Tipton have been released from said charge or charges, and affiant is informed and verily believes that the county attorney of said county, and W. N. Scales, the attorney for the private prosecutor herein, have agreed to release said Canfield and Tipton in case they would testify against affiant in this and the other causes named."

He next alleges that about the 1st of February, 1903, he entered into a contract with one James Loe, whereby affiant was to furnish Loe about two hundred head of range horses, but on account of a heavy fall of snow and unusually inclement weather about that time, he was unable to furnish the number agreed

upon, so he referred said Loe to Joe Canfield and Ellis Crooks. Affiant is informed and believes said Canfield and Crooks agreed to furnish said Loe said number of horses, provided affiant should turn in what horses he then had gathered, amounting to about forty head, and that said Crooks, Canfield and Eller sold to said Loe about one hundred head of range horses under said contract and affiant about forty head. That all of said horses were delivered to said Loe at Cottonwood, Idaho, about the ninth day · of February, 1903. That said Loe about the same time procured about twenty-five head of horses from the neighborhood · of Ferdinand, Idaho, claiming at the same time that he had purchased the same from Indians. To the foregoing facts Hugh O'Kane and William Robinson would testify if they were present at this term of court, and affiant cannot prove such statements by any other witness or witnesses, excepting James Loe, who, affiant is informed and believes, has been released from the aforesaid charges on a promise to testify against affiant. Therefore, without the presence of said Hugh O'Kane and William Robinson, affiant cannot safely go to trial at this term of court. He further says that "he cannot safely go to trial at this term of court without the presence of Julius Leitch, who, if present, would testify that he was present in Spokane, Washington, at the time affiant was arrested on this and other charges. And when he was arrested all that was said or done by affiant was that when the officers entered his room, he greeted them courteously and said, 'Very well, where do you want me to go?' That affiant was not in any way hiding or endeavoring to keep out of the way of officers and that he never claimed to be the wife of witness Julius Leitch, and affiant at the time he was arrested never stated, 'I guess you have got me for life,' or words to that effect, or, 'I guess you have got me,' and that no other conversation occurred there than aforesaid. That the witnesses William Eller and Ellis Crooks, would, if present, testify that the aforesaid contract was entered into and that they furnished, under said contract, the greatest part of said horses. . . . . That in all of said transactions between the parties named and James Loe, Ike Loe, his brother, acted as agent therein." Then follows an allegation that the application is

not made for delay merely, but that justice may be done in the premises.

In support of this application Clay McNamee makes an affidavit: "That he is one of the attorneys for the defendant. That within three days after said case had been set for trial he caused subpoenas to be issued for the attendance of William Eller, Ellis Crooks and Julius Leitch, and within about three days after procured an indorsement by the judge upon the subpoena issued for the said Leitch requiring his attendance at the trial of this cause. No return has been made upon said subpoena by the sheriff of Idaho county, but affiant is informed by one Godfrey Doust that said Leitch is in jail in Spokane, but will be liberated in a few days, said Leitch being held in said jail on suspicion of having committed a crime; that affiant is fully informed and believes the said Leitch, as soon as delivered, will immediately come to this court as witness for the defendant; that on yesterday J. M. Eller made the statement in open court that his son, William Eller, was in Cottonwood, Idaho, on last Saturday, and affiant is fully informed and believes that the said William Eller is now in Idaho county and that no return has been made by the sheriff showing that said Eller is not now in Idaho county; that the same condition as to the return of the officer is true in reference to the witness, Ellis Crooks, and affiant is fully informed and believes that the said Ellis Crooks is now in Idaho county, Idaho. That some three days ago affiant was informed that Hugh O'Kane and William Robinson were in western Oregon; that immediately thereafter he procured an order of this court requiring the attendance of both of said witnesses at this trial. That from an examination of the files and subpoena in this case, affiant has failed to discover any return by the sheriff of Idaho county in reference to either of said witnesses. That affiant is fully informed and believes and states the facts to be that defendant is poor and unable to pay the mileage and witness fees of either or any of said witnesses, and that owing to that fact he has been unable to ascertain the whereabouts of said witnesses or procure their attendance as witnesses. That the defendant has no other witnesses by whom he can prove the facts alleged in the affidavit

filed to-day and sworn to by the defendant. That affiant has been continuously engaged in the trial of a criminal cause in the above-entitled court ever since the fifteenth day of February, and at all times both before and after said dates has used every effort possible to procure the attendance of each and all of the witnesses named in the defendant's subpoenas on file in this action, by issuing subpoenas and procuring proper orders of this court and informing the sheriff and his deputies of the whereabouts of said witnesses so far as known to affiant and said defendant. That besides the witnesses herein named, the defendant has issued subpoenas within plenty of time to procure their attendance at this trial, but owing to a mistake of one of the sheriff's deputies said subpoenas have, in all probability, not yet been served upon all of said four witnesses, but affiant has been informed by the sheriff that the deputy who went to serve said four witnesses will probably be in Grangeville this afternoon and ready to make return upon said subpoenas. That defendant at this time cannot safely go to trial without the attendance of said witnesses, and affiant is unwilling to disclose to the state what will be their evidence until it can be ascertained whether or not said witnesses have been subpoenaed or a return made."

To this application for a continuance a counter-showing was made by the affidavit of Edward M. Griffith, the county attorney, to wit: "That he is, and for some time past has been, personally acquainted with the alleged witnesses mentioned in said affidavit, to wit, Hugh O'Kane and William Robinson; that said Hugh O'Kane up to a month or two ago conducted a saloon in the city of Grangeville, Idaho, and the said William Robinson was bar-keeper therein and performed other services for said O'Kane. That from the affidavit of the defendant, no time or places being given or any other information upon which this affiant could get at the facts, this affiant is unable to see how any testimony of the said Robinson or O'Kane would be competent or material. That one G. A. Doust, head jailer in the Spokane jail in Washington, in which city this defendant was first arrested on charge for which he has been informed against in the above-entitled action, and which said Doust has been

brought here by the defendant as a witness for the defendant, as this affiant is informed and believes, and who was present when the said arrest of said Will I. Rooke was made, can and will testify in regard to the transactions which happened at the time of said arrest, as this affiant is informed and believes. That the said G. A. Doust has told this affiant this morning that he was head jailer in the Spokane jail; that when he left Spokane the said Julius Leitch was confined in said jail on the charge of highway robbery, although he, the said Doust, believed that said Leitch would be discharged, or was discharged, by this time.

"That this affiant has examined the records in the probate court where a complaint was filed against the said Ellis Crooks, mentioned in defendant's affidavit, and the record shows that on February 1, 1903, a complaint was filed in that court charging said Crooks with grand larceny, and that a warrant was issued thereon, and that said charge is now pending, and that said matter has never been dismissed and the reason that said Crooks has never had an examination, as this affiant is informed and believes, is because said Crooks ever since the filing of said complaint, has been and now is a fugitive from justice. That there is now on file with the clerk of the above-entitled court a subpoena issued in behalf of the defendant for said William Robinson and Hugh O'Kane, dated the tenth day of February, 1904; that this cause was set for trial on the third day of February, to be tried February 11, 1904. That this affiant is informed and believes that both the said Hugh O'Kane and William Robinson are now residents of the state of Idaho. That at the last term of court the alleged witnesses, Hugh O'Kane and William Robinson, were both residents of this county and in the city of Grangeville, as this affiant remembers, and could easily have been had as witnesses in this case, but after the case was set for trial at said last term, the defendant broke jail, and escaped from the custody of the officers, and was not recaptured until after the expiration and adjournment of said last term of this court."

This constitutes the record before the trial court on this application for a continuance, and for the reason that counsel for

defendant (appellant) insist with so much earnestness that the court erred in not granting the continuance, we have deemed it best to disclose the entire showing. Applications of this character are addressed to the sound discretion of the trial court, and unless it appears from the record that that court has in some manner abused such discretion, this court will not interfere with its rulings or orders. A careful inspection of the showing made by the defendant as well as the counter-showing of the prosecution does not convince us that the court was in error in its ruling. It is not made to appear that the defendant was entitled to a continuance on account of absent witnesses, whose attendance he could not have procured with due diligence so far as it seems it would not have been in the power of the defendant to procure their attendance at any time in the future. It seems from the showing or counter-showing that one of the witnesses (Leitch) was in the jail at Spokane, the witness Crooks was fugitive from justice, O'Kane and Robinson were, or shortly prior thereto had been, residents of the county of Idaho. The other four witnesses mentioned in the affidavit of Mr. McNamee, whose names are not given, are supposed at the time of the filing of the application, to be residents of Idaho county. What defendant or his counsel expect to prove by these witnesses is not disclosed in the showing, hence the trial court was unable to determine the importance of their evidence or the necessity of their presence on behalf of the defendant as witnesses. It is fair to presume that the application of defendant for a continuance did not impress the trial court with much favor when it is remembered the defendant had escaped from the custody of the officers at a former term of the court, when it is shown that the two witnesses, O'Kane and Robinson, were residents of Grangeville.

We find no error in the ruling of the court in refusing to sustain defendant's motion for a continuance. We have examined *Lillienthal & Co. v. Anderson,* 1 Idaho, 673. In this case, it was shown that the witness was on very friendly terms with the defendant. The evidence expected to be obtained from such witness was set forth in the affidavits, and it was material on the issue of partnership. A subpoena had been issued for the

defendant and returned not served by the sheriff; a second sub-poena was placed in the hands of the sheriff for service with like results. The case was set on the first day of the term, March 7, 1876, for March 11th. It seems immediate steps were taken to procure the attendance of the witness, and this was the first term of the court at which the case was at issue. In *People v. Lee* (Cal.), 8 Pac. 685, the syllabus says: "It is error in a criminal trial to refuse the defendant a continuance asked for on the ground of absence of witnesses from the county where, from the uncontradicted affidavits of the defendant, it appears that such witnesses were regularly subpoenaed, that the facts which the defendant expected to prove by them and which are stated in the affidavit are material to the defense."

In *State v. Lund,* 49 Kan. 580, 31 Pac. 146, it seems the defendant was charged with a violation of the prohibition laws of the state of Kansas. An affidavit for continuance was made with the evidence of the absent witnesses set out in the affidavit. The prosecution agreed to treat the statement in the affidavit as the evidence of the absent witnesses; a trial was had, but the jury failed to agree. A second trial was ordered and the court refused to require the prosecuting officer to treat the statement in the affidavit as evidence of the absent witnesses on the second trial. This the court held was error. We do not think the case at bar falls within the rule laid down in either of the cases above cited and to which our attention is called by counsel for appellant.

In assignment No. 3 it is argued that the court erred in permitting the names of a number of witnesses to be indorsed on the information at or about the time of the commencement of the trial. It seems that the defendant, prior to the date of filing the information, waived a preliminary examination, and only the name of C. W. Dunham was indorsed on the information at the time of filing. The next step taken as shown by the record was the plea of not guilty, entered on September 12, 1903. Next follows an application on behalf of defendant for the court to fix and reduce amount of bail and which was argued and submitted to the court and taken under advisement; this was September 24, 1903.

Next we find an application for a change of venue, which was overruled by the court. The next mention of this case is dated October 6, 1903. "In the two causes, the defendant, William I. Rooke, having on September 30, 1903, escaped from the sheriff, the said causes are postponed." We find no other steps taken in this case until the February term, 1904. We find the application for a continuance was denied on the eighteenth day of February, 1904, and thereafter the prosecuting attorney asked permission to place the names of a large number of witnesses on the information, which was granted by the court. It does not appear that the defendant thereafter renewed his application for a continuance on the ground that he could not be prepared to meet the evidence of these witnesses, his application being based on the ground alone of the absence of witnesses on his own behalf.

In *State v. Wilmbusse,* 8 Idaho, 608, 70 Pac. 849, this court held that it was not error to allow the names of witnesses to be indorsed on the information even after the trial began, if it was shown that at the time the information was filed the names of such witnesses were unknown to the prosecuting officer. Again, in *State v. Crea, ante,* p. 88, 76 Pac. 1013, this court said: "Under the provision of laws of the Fifth Session of 1899, page 125, section 2, requiring the prosecuting attorney to indorse on the information the names of all the witnesses known to him at the time of filing the same when it is sought to have the names of other witnesses indorsed on the information after the same has been filed, the court must be satisfied that the names of such witnesses were not known to the prosecuting attorney at the time the information was filed, before such names are allowed to be indorsed thereon."

In *People v. Hall,* 48 Mich. 482, 42 Am. Rep. 477, 12 N. W. 665, the court said: "The court allowed the names of several witnesses to be added to the information during the trial, under objection, without any showing that they were not known earlier and in time to give defendant notice in season to anticipate their presence before the trial. The statute is explicit that this shall be done before the trial where witnesses are known." The defendant Hall was charged with the murder of his wife by

poison. Two of the witnesses whose names were added to the information were doctors. The court further says: "It appears by the testimony of Drs. Prescott and Buffield that they were employed by the prosecution about three months before the second trial, and it appeared further that their testimony was the chief testimony, and practically the only testimony tending to show arsenic in the body. The others were of less consequence."

It is thus shown that defendant was being tried the second time for the murder of his wife and that three months before the second trial, the two doctors had been employed by the prosecution to make an examination of the body, and upon such examination discovered arsenic in the body. There can be no question but that the prosecuting officer knew the importance of the evidence of the two doctors before the trial began and should have procured an order from the court to place such names on the information prior to the commencement of the trial. In the case at bar we find indorsed on the information at the time it was filed, to wit:

"Names of all witnesses known to said prosecuting attorney at the time of filing this information.

"G. W. DUNHAM."

At the time the county attorney asked permission to indorse the names of additional witnesses on the information, the following proceedings were had:

"Mr. Griffith: I desire to have a list of witnesses indorsed on the information. I will state this: that what might seem to be an oversight in not having this done before, is due largely to the unsettled facts and circumstances surrounding the trial of this case. It was uncertain at the beginning which one of these cases would be tried.

"The Court: How many cases?

"Mr. Griffith: Five cases; and then at that time, or what might have been the proper time to have asked this, for these indorsements, the names of all of our witnesses were not known, or a great many of whom have come to our knowledge since this case was set down.

"The Court: How many witnesses have you indorsed there?

"Mr. Griffith: All of them practically, except the prosecuting witness, only the one. I will say this: There was no preliminary examination had in the case, the defendant waived examination and the only witness who was indorsed was the complaining witness at the preliminary hearing, and that accounts for the fact that most of our witnesses were not indorsed upon the information.

"Mr. Scales: I will state in addition, that all these witnesses, I do not think with a single exception, were known to the defendant. They had the same source of getting it that we did; that was the evidence in the other cases, and in a great many cases. Most all of them had been subpoenaed by the defendant himself, so it is no surprise or anything of the kind."

Counsel for application objected to indorsing any names on the information, alleging surprise. This objection was overruled by the court and the names of witnesses were indorsed on the information by order of the court.

We think under the peculiar facts shown to have existed in this case, together with other cases pending in the court against the defendant, there was no error in the ruling of the court permitting the names to be indorsed.

The fourth assignment argued by counsel for appellant relates to the court ordering that all witnesses for the prosecution be sworn in a body. This practice is quite common in the trial courts of the state, especially where there are a large number of witnesses in attendance at the commencement of the trial, and we know of no statute or rule of the courts prohibiting it; hence we find no error.

In assignment No. 7, counsel for appellant says: "Witness Canfield shows by his own testimony that he stole the animal described under the information, and that he was testifying under threats of prosecution if he did not implicate the defendant, and under promises of release if he would do so. The testimony of a witness who is testifying under threats of prosecution is open to the grossest objection." This argument might

appeal to the justice, conscience and even sympathy of the jurors, but after it has passed them unheeded as well as the trial court on defendant's motion for a new trial without beneficial results to defendant under repeated discussions of this court, it will not reverse the judgment on appeal.

Another assignment of error is the refusal of the court to grant a change of venue. Counsel for appellant with energy, ability and earnestness insist that with the showing made of the bias and prejudice of the people of Idaho county, against defendant, he was entitled to have the case removed to another county, in the second judicial district, for trial. We have read the affidavits in support of this application, as well as those opposing it, with much interest and care. It seems that an organization exists in that county known as the "Idaho County Stock Association," the object and purpose of which is to protect their stock from larceny, and that such organization, through the medium of the newspapers of that section of the county, and otherwise, has published its willingness to pay a reward of $300 for the arrest and conviction of anyone charged with such crime. It also appears that this organization employed W. N. Scales to assist the county attorney in the prosecution of this action.

It is shown by the affidavit of the defendant, Clay McNamee, one of his attorneys, that this organization has about three hundred members, and whilst it is not shown by the record, we take judicial knowledge of the fact that Idaho county cast about four thousand five hundred votes at the last general election, being about one member of this organization to fifteen electors in that county, so far as interpreted by the courts. These organizations exist in many counties of the state under different names, are organized for the purpose of protecting personal property—especially livestock—from theft. It is certainly the privilege of good citizens to thus band themselves together for the universal protection of this property, and if the organization of such an association in a county where livestock raising is one of the principal industries is to be ground for a change of venue in cases where the parties are charged with the larceny of livestock, then the very object and purpose of the organization is to be thwarted by the law as interpreted by the courts.

We do not wish to be understood as holding that a change of venue should not be granted in some instances. It is frequently necessary that justice may be done, but in this case we find a large number of citizens of that county testifying that in their opinion, which is based on common rumor and frequent conversations with the citizens of the county, the defendant cannot have a fair and impartial trial; on the other hand, an equal number, and, so far as we are informed, equally as good citizens, testifying that in their opinion there is no necessity for the change, and that from their conversations and acquaintance with the people of that county, the defendant can have a fair and impartial trial. All this evidence, as well as many facts that we apprehend are not shown by the record, were before the learned trial judge, and, in the discharge of his duties, he refused to grant the motion for change of venue, and we find no error in such ruling.

Another assignment upon which appellant relies is based upon the fact that the information charges that the animal alleged to have been stolen was the property of G. W. Dunham, when, in fact, it belonged to Charles Dunham.

*State v. Rice,* 60 Kan. 868, 63 Pac. 737, is cited in support of this contention; the syllabus says: "Where property stolen belonged to one S., but the ownership was alleged in one B., and the evidence showed that the latter had charge of it as the servant of S., and had no other interest in it, a conviction for larceny from B. cannot be sustained." This case has no application to the facts of the one under consideration. It is nowhere shown that C. W. Dunham is not Charles Dunham, but it is shown by the evidence of Charles Dunham that the roan mare, alleged to have been stolen, was his property.

In *State v. Ireland,* 9 Idaho, 686, 75 Pac. 257, recently decided by this court, involving a question similar to this, it is said: "Where the information avers the title to stolen property in B., and the evidence shows that B. and J. are the owners thereof, the variance between the averment and proof is not fatal. (Overruling *People v. Frank,* 1 Idaho, 200." We do not think the variance in this case is fatal.

The next assignment of error urged by counsel for appellant to which we shall direct our attention relates to certain statements made by W. N. Scales in his closing argument to the jury on behalf of the prosecution. It follows: "From my standpoint, looking at the testimony as I do, if a juror under this evidence can say that the defendant is not guilty, he is influenced by something other than the testimony he has heard."

"Mr. McNamee: The defendant desires an exception to the statement of counsel.

"The Court: Certainly, the counsel does not mean to say that any juror has been improperly influenced.

"Mr. Scales: No, sir; I mean nothing of that kind. Gentlemen, when I examined you as to your qualifications to act as jurors, I asked each and every one of you whether, if the defendant's wife and two small children were brought into the courtroom during this trial, you would allow your sympathy for the wife and children to unduly affect you in arriving at your verdict; whether you would allow your sympathy to cause you to find the defendant not guilty, if the evidence found him guilty; and each and every one of you said you would not; and what I mean is that you should not let your sympathy alone cause you to find the defendant not guilty, but should be governed entirely from the evidence. I did not intend to impute improper methods to anyone."

Again, in the same argument, and immediately following the above language, Mr. Scales made use of the following language: "I want you to give this defendant justice, and justice is what this defendant does not want." Again, immediately following the last quoted language, the following language is credited to Mr. Scales: "Mr. Moore had said in his argument to you that he desired you to consider him as a thirteenth juror, and asked you to consider him as such. I am willing to accept Mr. Moore as a juror, and from the evidence in this case he would find the defendant guilty." We will dispose of these statements in the order named.

The first statement, in our view, was improper, but after the suggestion of the court, we think Mr. Scales placed himself in

a proper position before the court and jury. He suggested to the jury that the idea he meant to convey was that they were not to be influenced by any feeling of sympathy for the defendant, or his wife and two small children, and disclaimed any intent to impute improper motives or influence to any of the jurors. The next statement is merely the conclusion of counsel, and was his way of expressing his belief in the guilt of the defendant.

The next statement seems to have been called for in the estimation of counsel by what was said by Mr. Moore in his argument to the jury in behalf of defendant. It does not appear that the jury took Mr. Moore into their confidence sufficiently to make him the thirteenth juror. We are not informed as to whether Mr. Scales' confidence in him as the thirteenth juror was ill-advised, or otherwise. None of these statements fall within the rule laid down in *State v. Irwin,* 9 Idaho, 35, 71 Pac. 608, or *State v. Harness, ante,* p. 18, 76 Pac. 788.

Counsel for appellant base a number of assignments of error on the instructions given to the jury by the court on its own motion. We have carefully considered all the objections of counsel, and conclude that the defendant has no reason to complain of any of the instructions. The court fully and fairly instructed the jury on all questions of law arising on the trial of the case, and we find none that were misleading or ambiguous. When this state of facts appears from the record, it is not error for the court to refuse instructions offered by counsel for either the prosecution or defense.

Assignment No. 80 is based on the verdict as returned by the jury. It is shown by the record that in the beginning of the trial all proceedings were ordered to be in the name of William I. Rooke; the verdict is returned against William Rooke. There is no pretense that William Rooke and William I. Rooke is not one and the same party against whom the information was filed, and who was found guilty of larceny of the animal in controversy. It is insisted that the verdict should have been sent back to be corrected before being received, and failure to do so was error. It would perhaps have been better

practice to have had the verdict corrected, but we cannot agree with counsel's contention that it was error not to do so.

Many exceptions were taken to the ruling of the court on the admission of evidence of accomplices. Also as to other charges of larceny against the defendant. It seems that other charges of larceny were so closely interwoven with the one from which defendant was being tried that the court admitted some evidence as to other crimes. The court fully instructed the jury as to their duties with relation to both of these matters, and we think made it plain to them that defendant could only be convicted for the larceny of the animal alleged to have been stolen, and as charged in the information; also that the testimony of accomplices must be corroborated by some fact or circumstance before a conviction can be had.

This brings us to an important, as well as an unfortunate, condition of this case as shown by the record and the certificates of the learned judge who tried the case and settled the statement.

At folio 619, we find the following statement: "And be it remembered, that after the jury had retired to consider of their verdict, and before they had arrived at or returned their verdict into court, that a sealed letter was handed to the bailiff by some bystander, or stranger to the court, for the juror, J. D. Knoor, and was by the said bailiff handed to the said juror who retained and read the same, all before the verdict of the jury was returned or rendered; and that the said letter was not read by the court nor the defendant or his counsel, or submitted to either of them, nor did the defendant assent to the said letter being delivered to the said juror."

At the time of the hearing of this case at the last term of this court at Lewiston, Honorable Edgar C. Steele, judge of the second judicial district, filed the following certificate: "I, Edgar C. Steele, judge of the second judicial district of the state of Idaho, hereby certify that I am the judge who tried the above cause in Idaho county, state of Idaho, and certify to the statement of the case and bill of exceptions on motion for a new trial, as being true and correct, and that I have this day

examined the record in the above case as filed in the supreme court, and I find the following contained therein." (Here follows the statement purporting to be a part of the bill of exceptions and copied in full above.)

"I hereby certify that the said above quoted matter is false and untrue, in so far as any information of the district court is concerned, and was inserted in the record without my knowledge, assent or approval, and that the said statement and bill of exceptions, when signed, were not known to me to contain the foregoing quoted matter, and that I have no information or knowledge that any letter was referred to as having been delivered to the jury at any time until yesterday, the eighteenth day of October, 1904.

"I make this additional certificate in the interest of justice and good practice, and in order that your honorable court may strike the same from the statement, or take proper steps to have the statement and bill of exceptions corrected, in order that you may have a true statement and bill of exceptions before you in the hearing of this important case. I further certify that upon the motion for a new trial the same was never called to my attention, nor assigned as a reason for granting said motion, and that the same was never brought to my attention until the time hereinbefore stated."

It was admitted on the hearing of this case in this court by counsel for appellant that the letter was an unimportant one from the wife of the juror, and only related to some family matters, and the fact that the coyotes were killing the chickens, and as I now remember it, urging him to come home as soon as possible.

In our view of the case, it matters not what the letter may have contained, for the reason that the motion for a new trial did not call attention to the fact that this letter had been permitted to pass into the hands of one of the jurors, and an assignment of error urged upon the trial court by reason thereof, and be given an opportunity to investigate the facts in the case as to this letter. In all fairness to the trial courts, they should be given an opportunity to pass upon every question that is to

be presented to this court. Our attention is called to *State v. Bland,* 9 Idaho, 796, 76 Pac. 781. We do not wish to retract anything said in that opinion, but the facts were altogether different in that case from the one at bar. It was shown by the record in the Bland case that the letter was handed to the judge, and by him passed to the juror. There was a showing made on behalf of the state that one of the attorneys for the defendant consented to the delivery of the letter to the juror, but this was contradicted by the defendant and his attorney, and this court said it was error to allow the letter to go to the juror under the showing.

We find a difference in the authorities on the question under discussion, some saying that if it was shown that a letter has been allowed to go to a juror, it devolves upon the prosecution to show that the contents were of such a character that they did not in any way relate to the case; whilst others hold that it is error to permit a letter to go to a juror, no difference what its contents may be.

· We wish to be understood in this case as placing our ruling entirely on the ground that the trial court was ignorant of the fact that a letter had been given to a juror at any time during the trial, or before a verdict was returned by the jury; and further, that in the presentation of the motion for a new trial, the court's attention was not called to the existence of such fact.

We have carefully examined all the assignments of error, and in our view of the case it is unnecessary to pass upon any excepting those set out in this opinion. Many conditions arise in this case that are unusual in the criminal practice. We have set out in full the facts in many instances for the reason that courts are not frequently called upon to decide cases where so many complications arise, especially under conditions that exist in this case.

We have concluded that the motion for a new trial was properly overruled, and that the judgment in this case should be affirmed, and it is so ordered.

Sullivan, C. J., and Ailshie, J., concur.