(April 4, 1911.)

HENRY GIBBERT and MARY A. DONOVAN, Respondents, v. THE WASHINGTON WATER POWER COMPANY, Appellant.

[115 Pac. 924.]

CHANGE OF VENUE—SHOWING OF PREJUDICE—DISCRETION OF TRIAL COURT.

(Syllabus by the court.)

1. An application for a change of venue is addressed to the sound legal discretion of the trial court, and the decision reached by the trial court on such matter will not be reversed on appeal unless the showing made is such as to convince the appellate court that the trial court has abused such discretion.

2. In determining whether or not a trial court has abused the discretion vested in it in denying a motion for change of venue,

some weight and consideration may be given to the fact that the judge is personally acquainted with a large number of the citizens of the counties of his district, and is in a large degree familiar with the sentiment prevailing in his district touching questions of public importance, and those matters which necessarily attract the attention of the press and the public generally.

3. An application for change of venue ought to be supported by the affidavits of persons who have either been over the county generally, or through large communities thereof, and have heard the citizens generally express themselves in regard to the matter at issue, or by residents of different portions of the county who know of the sentiment prevailing in their respective communities.

4. The facts disclosed by the showing made in this case examined, and *held*, that there was no abuse of discretion in the ruling of the trial judge denying the application for change of venue.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. Robert N. Dunn, Judge.

Action for damages. Motion by defendant for change of venue. Application denied and defendant appealed. *Affirmed.*

Gray & Knight and Charles L. Heitman, for Appellant.

The "prejudice or local influence" which the law means to make the ground for removal may relate to the person of the litigant or to the subject matter of the litigation, and in all cases where there exists bias, partiality or unreasonable predilection in the local communities or courts, which will work injustice or prevent the party asking the removal from obtaining justice, the case should be removed, and when such conditions are shown to exist it is an abuse of discretion on the part of the trial court to refuse this change. (*Richardson v. Augustine,* 5 Okl. 667, 49 Pac. 930; *Omaha So. Ry. Co. v. Todd,* 39 Neb. 818, 58 N. W. 289; *Gandy v. Bissel's Estate,* 81 Neb. 102, 115 N. W. 571; *State ex rel. etc. v. Superior Court,* 40 Wash. 443, 111 Am. St. 915, 82 Pac. 875, 2 L. R. A., N. S., 568, 5 Ann. Cas. 775; *Buck v. Eureka,* 97 Cal. 135, 31 Pac. 845; *Packwood v. State,* 24 Or. 261, 33 Pac. 674; *Dowling v. Allen,* 88 Mo. 293; *State ex rel. Schonhoff v.*

*O'Bryan,* 102 Mo. 254, 14 S. W. 933; *Ott v. McHenry,* 2 W. Va. 73; *Cyra v. Stewart,* 79 Wis. 72, 48 N. W. 50; *Little v. Wyoming County,* 214 Pa. 596, 63 Atl. 1039; *Brittain v. Monroe Co.,* 214 Pa. 648, 63 Atl. 1076, 6 Ann. Cas. 617.)

The right to a change of venue is a right belonging to either party to the action, and the word "may" as used in the section means "must," and when the facts and circumstances which make it appear that a fair and impartial trial cannot be had are shown to the court, the judge should award the change of venue. (*In re Brown,* 2 Okl. 590, 39 Pac. 469; *Richardson v. Augustine, supra; Kansas Pac. R. Co. v. Reynolds,* 8 Kan. 623; *Janes v. American Cent. Ins. Co.* (Kan.), 109 Pac. 1077; *Griffin v. Leslie,* 20 Md. 15; *Stockwell v. Township Board,* 22 Mich. 341.)

A showing that the struggle respecting the matter in controversy has been bitter, and the subject of public meetings and comment and agitation in newspapers has been held sufficient to grant the change. (*Jacob v. Oyster Bay,* 119 App. Div. 503, 104 N. Y. Supp. 275; *Shipp v. Commonwealth,* 124 Ky. 643, 99 S. W. 945, 10 L. R. A., N. S., 337; *Udall v. Long Island R. Co.,* 2 How. Pr. (N. Y.) 138.)

Ezra R. Whitla, for Respondents.

In this case the showing made on the part of appellant is not so strong and conclusive as to show an abuse of discretion on the part of the court in denying the motion. The fact that appellant is engaged in litigation with other parties in Kootenai county, and that there is more or less feeling among those involved in that litigation, is no reason for changing the the place of trial in this case. While the affidavits submitted on the part of appellant allege bias and prejudice against appellant in Kootenai county to such an extent as to prevent appellant from having a fair trial of this case in that county, those allegations are as strongly denied on the part of respondents. (*State v. Rooke,* 10 Ida. 403, 79 Pac. 82; *Hyde v. Harkness,* 1 Ida. 601; *Shirley v. Nodine,* 1 Ida. 696; *Sommercamp v. Catlow,* 1 Ida. 722.)

STEELE, District Judge.—This action was brought by the plaintiffs to recover damages on account of the lands of the plaintiffs being overflowed by water, caused, as alleged, by a dam constructed by the defendant. The action was commenced in Kootenai county, and, after the cause was at issue, the defendant, the Washington Water Power Company, moved the trial court for a change of the place of trial from Kootenai county, on account of the bias and prejudice of the citizens of that county. Affidavits were filed in support of the motion and in opposition thereto; the trial court made an order overruling the motion, from which an appeal was taken to this court. The only question presented is as to whether the facts disclosed are such as to show that the trial court abused its discretion in refusing to grant the motion.

In support of the motion six affidavits were filed by the appellant, and the same number by the plaintiffs and respondents in opposition thereto. The principal affidavit in support of the motion is made by H. L. Bleeker. Said affiant states that he is the secretary of the Washington Water Power Company, gives a history of the building of the dam, whereby it is claimed the water was raised above its normal level upon streams and lakes affected by the construction of the dam, shows certain permits granted by the government of the United States granting to the Washington Water Power Company the right to overflow and hold waters upon certain low lands on the Coeur d'Alene Indian Reservation; shows that a large number of persons along the St. Joe and Coeur d'Alene rivers and different lakes have claimed to be damaged by the overflowing of their lands, which they claim was caused by the said dam, and that a large number of such persons petitioned the Secretary of the Interior to revoke the permit which had been given to the Washington Water Power Company to overflow the Indian lands, and procured hundreds of signers thereto; that at the hearing of this application in Coeur d'Alene City, Idaho, the county seat of Kootenai county, a large number of such persons appeared as witnesses; that public meetings were held during said hearings,

and that persons living along the St. Joe and Coeur d'Alene rivers, who claimed to be affected thereby, were in attendance; that in addition thereto certain persons, claiming to be affected by said dam, had petitions circulated among the taxpayers, residing along the St. Joe, St. Maries and Coeur d'Alene rivers, requesting the county commissioners of Kootenai county to take steps to prevent the overflow of lands along said rivers; two hundred and seventy-eight persons signed this petition; that by a subsequent petition the board was requested to make an appropriation to protect the roads of the county, which, as it was claimed by the petition, were being undermined and washed out, and the bridges theretofore erected were being washed away at points on the Coeur d'Alene river; and that the said board of county commissioners of Kootenai county upon the first petition, made an order as follows: "Petition approved. Prosecuting attorney ordered to take such action as the facts warrant." And that the said board of county commissioners did appropriate the sum of $1,000 to aid in carrying on the hearing.

The affidavit further states, in substance, that during the said hearing, and at different times, various newspapers published articles concerning the effect of the said dam. These articles are shown to have been published in several papers. Only two of those mentioned were located in Kootenai county, the others being published in the city of Spokane, Washington, and having a circulation in Kootenai county.

Exhibit No. 16, which is made a part of the affidavit of Bleeker published in the "Spokane Daily Chronicle," is as follows:

"Coeur d'Alene, Jan. 28.—(Special Correspondence.)— Kootenai County and the State of Idaho will be lined up together against the Washington Water Power Company in the backwater fight. A petition signed by all taxpayers along the St. Joe, St. Maries and Coeur d'Alene rivers was presented to the County Commissioners today, asking that

steps be taken to prevent the overflow of land from Harrison to Cataldo, due to the dam at Post Falls.

"They further stated in the petition that the county roads had been overflowed, bridges destroyed, making a total damage to the county of $6,000 in the last two years. If the dam is not done away with, a further damage of $5,000 will be incurred, they declare. The commissioners approved the petition, and referred the matter to the County Attorney, C. H. Potts, instructing him to take the necessary legal steps to protect the county's interest. This action practically makes the County and State against the Washington Water Power Company."

Exhibit No. 11, from the "Daily Spokesman Review," is as follows:

"That the people of Idaho must ultimately win in their fight with the Washington Water Power Company for the reclamation of the thousands of acres of farming land submerged by the back-waters from the Post Falls Dam is the belief of Paul Clagstone, Speaker of the Idaho House of Representatives. This is not a question between the land owners and the Washington Water Power Company, but a question for all of the people of Northern Idaho, said Mr. Clagstone, yesterday. The destruction of from 30,000 to 60,000 acres of rich agricultural land is a question of great importance. It affects not only settlers, but all the merchants of Northern Idaho and Eastern Washington. Idaho has taken up the fight as a matter of public policy. At a mass meeting at Coeur d'Alene Tuesday, a committee of three was appointed to put the matter before the proper authorities at once. This committee was composed of Boyd Hamilton, Mayor of Coeur d'Alene; Mr. Darknell, one of the settlers, and myself." The article closes with the statement, in substance, that the resolutions have been sent to Senators Heyburn and Borah, asking them to make protests to the Interior Department.

Exhibit No. 10 is from the "Coeur d'Alene Press," and is in part as follows:

"Last evening the settlers in controversy with the Washington Water Power Company put force to their oft repeated resolution by effecting a permanent organization, and delegating its powers to a central committee consisting of delegates from communities along the Coeur d'Alene, St. Maries and St. Joe River valleys to secure relief collectively from the Water Power Company by the removal of the dam at Post Falls.  This committee is to be delegated largely with discretionary powers in the manner of procedure. . . . . After the purpose of the meeting had been explained, reports of committees were called for.  Delegate Blessing, from the Coeur d'Alene river valley, presented a report of settlers' meeting containing a set of resolutions pledging support to the warfare on the Washington Water Power Company, and signed by Wm. Doty and thirty-six others.  Several speeches were made, the key-notes to which were: 'Unite to cope with the Washington Water Power Company' and 'Immediately to formulate some definite plan of action.' . . . . Hon. T. T. Kerl said: 'Public health is a strong point with which to fight the Washington Water Power Company; but I'm inclined to think the company will rely upon its vested rights to maintain the dam.' . . . .

"Clarence Butler, who owns a farm on the river below St. Maries, said: 'Mosquitoes, the carriers of disease, were so numerous last summer that I had to go to St. Maries to sleep.' . . . . Mr. Andrews: 'Am interested here, though I have settled with the Washington Water Power Company.  It was a case of half a loaf, or no loaf at all.' "

The meeting finally closed with the adoption of a resolution addressed to the state board of health, asking that body to order an investigation.

These publications are a fair sample of the matters purporting to have been published.

In addition to the affidavit of Bleeker, the secretary of the company, the affidavit of John P. Gray was filed, in which Mr. Gray states that he has been for a number of years, and now is, an attorney for the Washington Water Power Company, and that he is well acquainted with the citzens of

Kootenai county; that he assisted as such attorney at the hearing of the application made to the Secretary of the Interior to revoke the permit given by the government to the Washington Water Power Company, granting to the company the right to overflow certain Indian lands, and gives the history of that hearing, stating in substance that a large number of citizens were permitted by the Interior Department to be made intervenors in the said proceeding, all of said persons being those who had petitioned the Secretary of the Interior to revoke such permit; that during said hearing the matter was generally discussed among the citizens, and that a great many of the citizens of Kootenai county were present when the evidence was taken. Affiant states that he has frequently discussed the matter with the said persons and with other citizens, and is familiar with the general sentiment in said county of Kootenai concerning the use of Lake Coeur d'Alene and certain lowlands along its banks, and that the present cause is one for a jury to try, and, in his judgment, the minds of the citizens of Kootenai county are so biased and prejudiced that the said Washington Water Power Company cannot have a fair and impartial trial in that county.

The affidavit of Henry P. Knight, also one of the attorneys for the defendant, shows in substance that he has been a resident and citizen of the county of Kootenai, and that there are a large number of actions pending in Kootenai county similar to this action, and that on account of the investigations and hearings heretofore had, and the statements made by the public press, it is his opinion that the defendant could not have a fair trial.

In addition to the said affidavits, there were filed the affidavits of H. M. Strathern, who resides at Post Falls, and that of M. D. Wright, who resides in the city of Coeur d'Alene, in which affidavits each affiant states that affiant is well acquainted throughout Kootenai county, and that on account of the articles published in the "Spokesman Review" and the "Spokane Chronicle," the "Coeur d'Alene Evening Press" and the "Journal," the latter two of which are published at Coeur d'Alene, Idaho, and the hearing held, heretofore men-

tioned, it is the opinion of the affiant that the Washington Water Power Company could not have a fair trial in Kootenai county.

The affidavit of Charles L. Heitman, also an attorney for the Washington Water Power Company, is filed in support of the application for a change of venue, and is very similar to that of attorney Knight to which attention has been heretofore called.

In opposition to the motion, the affidavit of one of the plaintiffs, Henry Gibbert, is filed, in which he says, in substance, that his land has been overflowed; that the defendant, the Washington Water Power Company, has refused to pay him any damages, and endeavored to prolong the litigation and postpone the trial of the cause; that the land is situated on Coeur d'Alene lake within less than two miles of Coeur d'Alene City; that all of the plaintiff's witnesses reside in the immediate vicinity of Coeur d'Alene; that he is a man without means, and that a change of the place of trial would involve great and additional expense in procuring witnesses, and getting his witnesses to go to another county, which he is unable to bear, and that he could not take all of his witnesses to another county. He alleges that there is no such feeling in Kootenai county as would prevent the defendant having a fair trial; that he has observed the publications in the newspapers, and especially the Spokane papers, in regard to the hearing being held and the testimony submitted at Coeur d'Alene, Idaho, and that in the opinion of affiant said newspapers printed and published the defendant's side of the case, and the testimony submitted upon the part of the defendant, in a fair, impartial manner, as well as the testimony submitted adverse to the defendant in said action, and states that he is informed and believes that all of the parties who have submitted affidavits in support of the defendant's motion for a change of venue are either attorneys for the defendant, or in some way connected with the defendant company, either as an officer of the company or otherwise; and in the opinion of said affiant, the defendant can have a fair and impartial trial in Kootenai county.

The affidavit of Robert W. Collins, filed in opposition to the motion, states in substance that he is a resident of Kootenai county, and has been for eight years last past, and is well acquainted with the people of the county and the taxpayers thereof, and those who would serve as jurors; that from the knowledge and information of the affiant, it is his opinion that the defendant can have a fair and impartial trial in the case, if the same is tried in Kootenai county, and that there is not a prejudice against the defendant in said county existing to such an extent as will prevent the defendant from having a fair and impartial trial in Kootenai county.

The affidavit of J. M. Elder, filed in opposition to the motion, states that he is a resident of Kootenai county, and has been for more than seven years; that he is postmaster at the city of Coeur d'Alene, and has been such for more than two years; that he is well acquainted with the city and the county and the taxpayers, and those who would serve as jurors; that in his opinion the defendant can have a fair trial.

The affidavit of John F. Steele, filed in opposition to the motion, shows that he has been a resident of Kootenai county for fifteen years, and is acquainted with those who would serve as jurors in said county; that from the knowledge and information that the affiant has, the defendant can, and will, have a fair and impartial trial in Kootenai county.

The affidavit of Horace H. Hubbard, filed in opposition to the motion, states in substance that he is a resident of Kootenai county, and has been for more than five years; that in his opinion there is not a prejudice against the defendant in said county existing to such an extent as will prevent the defendant from having a fair and impartial trial.

The affidavit of E. A. McCarty states that he has been a resident of Kootenai county for nineteen years, and, in other respects, is similar to that of the affiants, Hubbard and Steele.

An application for a change of venue is addressed to the sound discretion of the trial court, and the decision reached by the trial court will not be reversed upon appeal unless the showing made is such as convinces the appellate court that such discretion has been abused. A trial judge may be pre-

sumed to be reasonably well acquainted with the sentiment of the citizens of the counties in his district, and weight should be given to the expression of the trial judge upon such a question.

In the matter in question the motion for a change of venue was overruled by the trial court upon the same affidavits that are now before this court. It will be noticed that the chief reliance of the defendant for a change of venue is based upon the fact that four or five newspapers, at least two of which were published in the city of Spokane, state of Washington, published numerous articles as news items, which, it is claimed, either directly or indirectly criticised the action of the Washington Water Power Company, or so stated the facts as to create a prejudice among the citizens of Kootenai county to such an extent that a fair and impartial jury could not be had in said Kootenai county to hear and determine the cause.

The growth and improvement of the facilities for delivering mail, and the great desire of the public for information and enlightenment, which is always increasing, has within the past decade, been marvelous, and at this time there are but few communities where there is any centralization of the people, which the daily papers fail to reach. The rural mail delivery system, and other improvements in the delivery of the mail, have brought about such conditions as make it possible for persons who live in rural communities to be in daily intercourse with what is going on at other places.

The principal affidavit in this case, giving the details and copies of the articles published in the different papers, was made by Bleeker, who is secretary of the Washington Water Power Company, and his opinion is based almost entirely upon the fact of the publication of such articles and statements made in public utterances by public speakers. Three other affidavits were made by three of the attorneys for the defendants, and these three attorneys base their opinion upon the publication of such articles, and also upon their acquaintance throughout Kootenai county. The other two affidavits filed in support of the motion are based almost wholly upon said pub-

lications and also their acquaintance with the citizens of Kootenai county.

A citizen is not disqualified from sitting as a juror merely because he has read articles published in the newspapers, detailing what purports to be the facts in the case; and the opinion of the juror as to the merits of the cause, based solely upon what has been read in the newspapers, published as matter of news, should rarely, if ever, be accepted by the court as a sufficiently unqualified opinion to disqualify the juror. In this age every person of intelligence reads the newspaper to a greater or less extent, and to adopt a rule disqualifying men to serve as jurors who have formed some kind of an impression or opinion from reading articles published in the public press would be, in effect, relegating intelligent jurors to the background, and would result in the selection of a less intelligent and a less efficient jury. In determining a question for a change of venue, where the affidavits in support of a motion are based merely upon the fact that such articles were published, the court must keep in view what the law requires as grounds to disqualify a person from sitting as a juror. (See sec. 4380, Rev. Codes.)

It may be that every citizen in Kootenai county has read the articles published in these different newspapers, and yet that none of them, on account of the mere reading of such articles, would be disqualified from sitting as a fair and impartial juror in the trial of the cause. The place where the juror resides, whether he has ever talked it over with his neighbors or with his family, and whether he has ever expressed his views about it, all have to be considered; and while it might require greater care upon the part of the trial judge, and upon the part of counsel in the case to obtain a jury of fair minds to try the case, when such publications have been made, yet the fact that such articles were published and were read by a juror would not, of itself, necessarily disqualify the juror.

This application for a change of venue lacks strength in that the expression of individual citizens throughout Kootenai

county, by affidavit, that in their opinion the defendant could not obtain a fair trial, is absent. No showing is made by anyone who either claims to have been over the county generally, or who claims to have heard the citizens of the county generally express themselves in regard to the matter at issue. The only positive expressions of sentiment shown by the appellants come only from either politicians or interested parties, none of whom would be qualified to act as jurors in this case, even though they had expressed no views or opinions on the matter. It is usual in such cases to give the court the opinions of intelligent citizens, subject to be called as jurors, scattered throughout the county, based upon a proper statement of facts, showing that a party cannot likely have a fair trial in the judgment of such citizens.

This court, in the case of *State v. Rooke,* 10 Ida. 388, 79 Pac. 82, stated as follows:

"An application for change of venue will be denied when it is based on the ground of the bias and prejudice of the people of the county, where it is shown that an equal number of the citizens testify that in their opinion a fair and impartial trial can be had in the county."

In that case it was shown that the defendant was arrested for the stealing of livestock, and there was an organization existing in the county known as the Idaho County Stock Association, which had over 300 members, and that the association had offered a reward of $300 for the arrest and conviction of anyone charged with the crime of stealing livestock; that the total number of votes cast in the county was about 4,500, and that, therefore, the members of the association constituted one-fifteenth of the total number of electors of the county, and the court used the following language:

"On the other hand, an equal number, and, so far as we are informed, equally as good citizens, testify that in their opinion there is no necessity for the change, and that from their conversation and acquaintance with the people of that county, the defendant can have a fair and impartial trial. All this evidence, as well as many facts that we apprehend are

not shown by the record, were before the learned trial judge, and, in the discharge of his duties, he refused to grant the motion for change of venue, and we find no error in such ruling.''

In the case at bar, it is shown that four of the six persons who aid this court by their opinions in support of the motion for a change of venue were, at the time of making their affidavits, and for some time prior thereto had been, associated with and interested in the Washington Water Power Company in this particular case, one of the affiants as secretary of the company, and three as attorneys. The opinions of the men who might be called upon to serve as jurors are absent from this case. The most that can be said for the showing made in the case at bar is that some localities in Kootenai county are shown to have some feeling against the manner in which the defendant has conducted its business, and that some of the citizens are not qualified to sit as jurors, but the conclusion does not follow that the defendant cannot have a fair jury and a fair trial in Kootenai county.

It is well known that every business institution investing large amounts of capital and employing large numbers of men in any community, generally receives criticism, and that some of the citizens become biased against the institution; they make public their criticism and bias through the public press and otherwise, but to conclude that the citizen reading or hearing such matters is necessarily biased so that he cannot sit as a fair and impartial juror in a cause wherein the institution is a party, is to attack the intelligence of the average American citizen.

The bias or formed opinion which would disqualify jurors is not shown by the affidavits filed in this case.

There is another matter which should not be overlooked in this case, and that is the issue to be tried by the jury. This is an action to recover damages. The defendant company admits the cause of action; admits that it has appropriated and flooded the plaintiffs' land, and that plaintiffs have sustained damages by reason thereof, but denies that the damage

amounts to as much as the plaintiffs claim.  The cause of action is therefore admitted; it is only a question of the amount to be recovered.  In such a case the trial court might properly take into consideration the financial ability of the plaintiffs to meet the increased expense that might be entailed by reason of the change of place of trial, and their probable ability or inability to meet the necessary expense in procuring sufficient evidence to enable them to obtain substantial justice. In such a case the court might properly weigh the relative advantages or disadvantages to be sustained by the respective litigants by reason of a change of venue should the same be granted.  The court may have concluded that the defendant would not suffer as much injury by reason of any prejudice that might exist in Kootenai county against it as the plaintiffs would sustain by reason of their inability to procure the necessary number of witnesses to go to another county and testify.

The order made by the trial court denying the motion for a change of venue is *affirmed.*   Costs awarded in favor of respondent.

Ailshie, Presiding J., concurs.

SULLIVAN, J., Dissenting.—I dissent.  It clearly appears to me from the affidavits filed in support of said motion that the feeling in said county had been very bitter against the appellant corporation.  Several affidavits were filed by respondents in opposition to the motion, which are similar in form.  They are to the effect that in the opinion of the affiants "sufficient prejudice" does not exist in said county to prevent appellant from having a fair trial therein, thereby admitting that some prejudice exists.  In nearly all of the opposing affidavits it is stated by the affiants that in their opinion "there is not a prejudice against the defendant in said county existing to such an extent as will prevent defendant from having a fair and impartial trial in said case in said county of Kootenai."  Those affidavits do not deny that many public meetings were held in said county attended by

large numbers of people, at some of which were passed resolutions denouncing said appellant; that citizens were active in creating an ill-feeling toward appellant; that the newspapers circulated in said county contained the articles attached to appellant's affidavits; that the board of county commissioners of said county appropriated $1,000 to one of the intervenors— to wit, William Truman, to assist him in carrying on certain litigation against said company, and in fact deny but few, if any, of the material facts set up in the affidavits of appellant tending to show that public feeling ran high in said county and that there was great prejudice therein against it. The opposition affidavits admit that there is some prejudice, but aver that it does not exist to such an extent as will prevent the appellant from having a fair and impartial trial in said county, in the opinion of affiants. In my view of the matter, there are but few cases in the books that present a stronger showing for a change of place of trial than is made in this case. The dictates of natural justice, as well as the authoritative command of our fundamental law, require that our courts administer justice without prejudice, and to administer justice with prejudice will bring our courts into disgrace and disrepute among the people.

This court, in the case of *Day v. Day*, 12 Ida. 556, 86 Pac. 531, 10 Ann. Cas. 260, held that it was absurd and a mere pretense to say that a party to an action could secure a fair and impartial trial when the minds of the people all over the county were excited and prejudiced against him. It is well recognized that the legal discretion of the court must be governed by rules and not by humor or caprice. A change of venue should be granted upon proper application when it is made to appear that persons are active in forming public opinion against the defendant; that exaggerated reports have been circulated concerning the conduct of the defendant; that a bitter feeling exists in the county and that there is great excitement in regard to the matter among the citizens of the county; that numerous persons have made repeated and special efforts to incite a feeling of hostility against the defendant.

When there is so much interest taken in a matter as is shown to have been taken by the citizens of Kootenai county in the matter involved in this action, the best citizens of the county may unconsciously be biased and prejudiced, and sound public policy, that is interested in preserving the courts from discredit and in giving to all litigants a fair and impartial trial, free from prejudice, demands that no man shall submit his cause to a jury that entertains bias or prejudice against him. The order of the court denying an application for a change of venue ought to be reversed.

Petition for rehearing denied.